18 P.3d 219

**In the Matter of Application for Transfer No. 5116 in the Name of Charles L. Barron.**

**Charles L. BARRON, Applicant–Appellant,**

v.

**IDAHO DEPARTMENT OF WATER RESOURCES, Respondent.**

No. 25828.

Supreme Court of Idaho,
Twin Falls, November 2000 Term.

Feb. 6, 2001.

Arkoosh Law Offices, Gooding, for appellant. C. Thomas Arkoosh argued.

Hon. Alan G. Lance, Attorney General; Phillip J. Rassier, Deputy Attorney General, Boise, for respondent. Phillip J. Rassier argued.

WALTERS, Justice.

This is an appeal from a decision by the Department of Water Resources denying Charles Barron's application to transfer a water right. We affirm the Department's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Charles Barron's transfer application concerns water right number 37–02801B, which has a 1905 priority date for six cubic feet per second (cfs) of water in Camas County. Barron proposed to split this right into two separate rights: 37–02801C and 37–02801D. The first (37–02801C) would divert 1.2 cfs of the original right at a location approximately fifteen miles upstream from the licensed place of use. The second (37–02801D) would divert the remaining 4.8 cfs at a location downstream approximately eighty miles from the licensed place of use.

Although the source for 37–02801B is listed as Camas Creek, it is apparent that the stream has also been called Malad Creek at some previous times. Additionally, Idaho Department of Water Resources (IDWR or Department) agent Jim Stanton, in a memo discussing Barron's application, stated that the source of Barron's right is Threemile Creek. Thus, there is some confusion in the record as to the source of the right.

The origin of water right 37–02801 can be traced to the filing of an application in 1905 for the use of 12 cfs of water from Camas Creek. It appears from the record that the original point of diversion was located on Camas Creek approximately four miles upstream from the place of use. Water was then conveyed by a ditch to the licensed place of use because, according to information provided by the applicants in 1905, water did not flow below the point of diversion past the middle of July.

In 1948, an individual named E.F. Wilson applied to the Department of Reclamation[1]

---

1. Idaho Code section 42–1701 was amended in 1974 to provide for the creation of the IDWR. See Act of Feb. 21, 1974, ch. 20, 1974 Idaho Sess. Laws 533. Prior to that time, transfer applica-

to change the place of diversion for 6 of the 12 cfs authorized under 37–02801. Wilson sought to change the diversion from the point four miles upstream on Camas Creek to a location near the confluence of Threemile Creek and Camas Creek. The stated reason for the change in the place of diversion was that the original point of diversion was impracticable because of the low grade at which the four-mile ditch was constructed. Wilson's application included a hand-drawn map indicating that the point of diversion was to be located on Camas Creek, just below the confluence with Threemile Creek. However, the map submitted by the IDWR in its appellate brief places the current point of diversion on Threemile Creek, above the confluence. The placement of the point of diversion on Threemile Creek is consistent with the map submitted by Barron in his application.

In 1968, an individual named Rocco Perry filed an application for a second alternative point of diversion at a point closer to the confluence with Threemile Creek. Perry stated in the application his intent to use a portable pumping system that was to be moved between the two alternate points of diversion. The Department of Reclamation approved the addition of the second alternative point. Perry's hand-drawn map also indicates that the second point of diversion is located on Threemile Creek. Thus, the confusion as to the source of 37–02801B seems to be that while the 1905 application and all subsequent applications list the source as Camas Creek, since Wilson's 1948 transfer the water has actually been diverted from Threemile Creek.

There is also some confusion in the record as to the relationship between 37–02801B and licensed groundwater right 37–07295, both of which are appurtenant to the same land. Groundwater right 37–07295 was established in 1973 by Lynn Stevenson, who currently owns the 311 acres of land to which 37–02801B is appurtenant. Surface water right 37–02801B, as the principal water supply for the authorized use, is the "primary right" for this land. Groundwater right 37–07295 is a "supplemental right"—an addition-

al appropriation of water to make up a deficiency in supply from an existing water right, here 37–02801B.

Barron filed his application on June 16, 1997. Citing concerns over the nature of Barron's water right and the potential for injury to other users, IDWR agent Jim Stanton filed a memorandum on July 17, 1997 recommending that the transfer application be denied. The IDWR subsequently published notice of the application as required by Idaho law. No protests were received in response to the published notices. Also pursuant to Idaho law, the Department obtained the recommendation of the watermaster in the local water district. The watermaster, who expressed concern over the potential injury to downstream water users, advised against approving Barron's transfer.

Barron and the IDWR subsequently exchanged correspondence concerning the transfer application. On five separate occasions, the IDWR requested that Barron provide additional information to address the agency's concerns. Although Barron responded in writing to each of the Department's requests, the IDWR indicated in its final letter that Barron had still not presented sufficient information for the Department to approve his transfer application.

On October 28, 1998, the IDWR issued a preliminary order denying Barron's application. Before the order became final, however, Barron appealed directly to the district court. The district court affirmed the Department's action denying the transfer in a decision issued on August 6, 1999. Barron then brought this appeal from the district court's decision.

### ISSUES

Barron presents three issues on appeal. First, Barron contends that the Department's decision denying Barron's application was not supported by substantial and competent evidence. Second, he questions whether the Department's decision denying his application was in violation of constitutional or statutory provisions. Finally, Barron argues that the IDWR's decision denying his appli-

tions were submitted to the State Reclamation Department.

cation exceeds the Department's statutory authority.

## DISCUSSION

### A. Standard of Review

■ Idaho Code section 67–5240 provides that all proceedings by an agency other than the Public Utilities Commission or the Industrial Commission that may result in the issuance of an "order" are governed by provisions of the Idaho Administrative Procedure Act (IAPA). *See* I.C. § 67–5201 *et seq.* Under the IAPA, the IDWR's decision may be overturned only where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). The party attacking the Department's decision, here Barron, must first illustrate that the IDWR erred in a manner specified in I.C. § 67–5279(3), and then establish that a substantial right has been prejudiced. *See Price v. Payette County Bd. of Comm'rs,* 131 Idaho 426, 429, 958 P.2d 583, 586 (1998).

■ In an appeal from the decision of a district court acting in its appellate capacity under the IAPA, this Court reviews the agency record independently of the district court's decision. *See Comer v. County of Twin Falls,* 130 Idaho 433, 437, 942 P.2d 557, 561 (1997); *Howard v. Canyon County Bd. of Comm'rs,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996). The Court will not substitute its judgment for that of the agency as to the weight of the evidence presented. *See* I.C. § 67–5279(1). In other words, the agency's factual determinations are binding on the Court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *See id; see also* I.C. § 67–5240(d). With this standard in mind, we first turn to whether the Department's decision was supported by substantial evidence in the record.

### B. The Department's Decision

Water transfers in Idaho are governed by Idaho Code section 42–222. This section provides that any person who desires to change the point of diversion or the place, period, or nature of use of the water must apply to the IDWR for approval. *See* I.C. § 42–222(1). Upon receipt of the application, the Department's director is instructed to provide written notice to the public of the proposed change as well as advise the watermaster of the district in which such water is used. *See id.* The watermaster in turn makes a recommendation to the director concerning the application. In determining whether or not to approve the transfer, the director is instructed to "examine all the evidence and available information," including the watermaster's recommendation, and to approve the change in whole or in part if "no other water rights are injured thereby, the change does not constitute an enlargement in use of the original right, the change is consistent with the conservation of water resources within the state of Idaho and [the change] is the local public interest. . . ." *Id.*

### 1. Injury to Other Water Users

■ Barron argues that the IDWR's findings pertaining to injury are not supported by substantial and competent evidence in the record. He asserts that the watermaster's recommendation and the Stanton memorandum, upon which the Department partially based its decision to deny Barron's transfer application, do not constitute competent evidence.

Barron first contends that the watermaster's statements should be disregarded because they are merely conclusory remarks typed onto a preprinted form provided by the Department. It is apparent from the form, however, that it does not suggest to the watermaster what his response or recommendation should be. The form is merely intended to allow the watermaster to state whether he endorses the proposed transfer and to give the reasons for his conclusion.

There is no dispute in this case, that the watermaster, based on his experience with and knowledge of the water right in question, was qualified to give such a recommendation.

Stating his belief that water right 37–02801B was strictly a "flood right," the watermaster expressed his concern that without stringent regulation, the proposed transfer would damage downstream rights. Because the director is statutorily required to consider the watermaster's recommendation as evidence, *see* I.C. § 42–222, it would be incongruous to require the watermaster to submit his recommendation and then to disregard his remarks as "conclusory."

In addition, there is other information in the record supporting the watermaster's statements regarding the availability of water. Foremost, the original 1905 application states that "no water runs later than the middle of July." Although this early reference is to Camas Creek, it suggests that the water supply in the area normally dries up as the summer progresses. Moreover, there is the issuance of groundwater right 37–07295 to supplement the surface water right in 1973. This fact alone mitigates against Barron's contention that the surface water is sufficient to irrigate the licensed place of use throughout the growing season. Furthermore, the Stanton memo makes reference to evidence that Threemile Creek virtually disappears in June after the spring runoff. We therefore conclude that the watermaster's recommendation comprises competent evidence to be considered by the director.

Barron also contends that the Stanton memo and the recommendation form were issued at a time when the Department was mistaken as to the source of water right 37–02801B. However, as was discussed above, the mistake as to the source of water right 37–02801B stems from the fact that on paper the source of 37–02801B has always been listed as Camas Creek, when in reality, since 1948 the source has been Threemile Creek. Thus, Stanton's reference to Threemile Creek as the source was actually correct. Accordingly, we also conclude that Stanton's memo constitutes competent evidence.

Barron further challenges the IDWR's finding that he failed to provide sufficient information about the lack of possible injury to downstream users. He asserts that he provided information and under oath asserted that the proposed transfer will not injure downstream water users. Consequently, he argues that there is no evidence in the record indicating that other users will be injured, particularly in light of the lack of protest after publication of notice of the proposed transfer. He asserts that the Department's statements amount to mere speculation and therefore, the record does not contain substantial and competent evidence to support the IDWR's findings. However, other than the sworn assertions of Barron and John Faulkner, the individual to whom Barron proposes to transfer the upstream water right, the record contains little if any evidence to support Barron's argument.

There is, on the other hand, in addition to the watermaster's recommendation, other evidence in the record indicating that Barron's transfer would potentially injure other water users. For example, the Stanton memorandum recites that a number of other water rights exist on Chimney Creek—the watercourse where Barron proposes to transfer his upstream point of diversion. Of these rights, Stanton reports that the largest are located downstream from the proposed point of diversion and that several contain priority dates earlier than 1905—the original priority date for 37–02801. Hence, the IDWR's concern over the potential for reduced availability, *i.e.*, injury, to those rights appears valid.

The IDWR thus appears legitimately concerned that Barron's proposed transfer will result in injury to other water users. As this Court noted in *Jenkins v. State Dept. of Water Resources*, "[t]he director is statutorily required to examine all evidence of whether the proposed transfer will injure other water rights...." 103 Idaho 384, 387, 647 P.2d 1256, 1259 (1982). Barron necessarily bears the burden of providing the Department with sufficient information to show non-injury to other water rights, and this Court will not substitute its judgment for that of the Department as to the weight of the evidence Barron presented.

## 2. Enlargement in Use

■ Barron also argues that the IDWR made several findings pertaining to enlargement in use that are not supported in the record. The record demonstrates, however,

that Barron did not present sufficient evidence of non-enlargement to the Department such that the director could approve Barron's transfer. Because Barron has failed to establish this criterion, we concluded that the IDWR's findings were well supported.

### a. Historical Consumptive Use

Under I.C. § 42–222(1), the director may consider historical consumptive use, as defined in I.C. § 42–202B,[2] as a factor in determining whether a proposed transfer would result in an enlargement in use or injure other water rights. *See* I.C. § 42–222(1). Barron contends that he has provided relevant information on the background and historical use of the subject water right. A close reading of the record, however, demonstrates that he did not.

The Department specifically requested evidence from Barron regarding the historic use of water right 37–02801B on three separate occasions. For example, on January 9, 1998, the IDWR requested that Barron provide detailed evidence about 37–02801's historical use. Specifically, the letter requested that Barron provide a legal description and supporting documentation showing when and where water right 37–02801B had been used during the previous ten years. In addition, the letter asked that Barron present evidence of the "extent of beneficial use made of this right, in terms of the rate and period when water has been diverted. . . ." Barron's response to these requests reveals that he was unable to present competent evidence to the IDWR. Barron, through his attorney, replied to the January 9 letter by filing a document entitled "Synopsis of Water Right No. 37–02801B and Transfer No. 5116." The Synopsis states that "[t]he affidavits with this application indicate full use of the right on the licensed place of use in 1991 and 1996." One of these affidavits, that of John Faulkner, the intended recipient of one of the transfers, makes no reference to the historical use of water right 37–02801B. The other affidavit, by Barron himself, merely states that during some years in the 1980's, the

right was used to irrigate a parcel of land other than the licensed place of use, and that "[i]n 1991, and again in 1996, [Barron] used Water right No. 37–02801B to irrigate the licensed place of use." As the district court noted when reviewing the record, absent are any meaningful statements regarding the period of use, the amount of water diverted or consumed, or whether and to what extent groundwater right 37–07295 was used to supplement the surface water right.

In addition, the record contains evidence directly refuting Barron's vague assertions. The Stanton memorandum discloses that the licensed place of use for the subject water right has been leased and farmed by an individual named Shannon Wolf for the last seven years, and that Wolf has irrigated solely with groundwater during this period. Barron states in his affidavit that his use of a surface water right in 1991 and 1996 on the licensed place of use was not communicated to Wolf, and that to Barron's knowledge Wolf did not know of Barron's use of the water to irrigate. However, given Stanton's information, it would seem unlikely that in 1991 and 1996 Barron and Wolf were irrigating the same 311 acre parcel or, given that Wolf apparently holds Barron in some disregard after Barron sued Wolf in 1993, that Barron was irrigating surrounding land without Wolf's knowledge. It therefore appears from the record that Barron failed to provide the IDWR with sufficient information to establish the historical consumptive use.

### b. The Relationship between Water Rights 37–02801B and 37–7295

Another area of concern for the Department was the potential enlargement of groundwater right 37–07295 should Barron's application be granted. As mentioned above, groundwater right 37–07295 is the supplementary right to surface right 37–02801B. The problem arising with Barron's proposed transfer is that the previously combined use of the two water rights is limited to the consumptive use on the 311 acre tract of

---

**2.** Idaho Code section 42–202B(1) defines consumptive use as "that portion of the annual volume of water diverted under a water right that is transpired by growing vegetation, evaporated from soils, converted to nonrecoverable water vapor, incorporated into products, or otherwise does not return to the waters of the state."

land. If water right 37–02801 is moved to another tract, (or tracts) with the result that the two rights would irrigate more than 311 acres, then there is an enlargement of the water right. Barron contends that he provided evidence to the IDWR that 37–0281B is the primary or "stand alone" right and asserts that the proposed transfer would result in the licensed place of use being farmed as dry land. Barron, however, neither owns nor exercises any control over the land upon which 37–02801 or 37–07295 is appurtenant.

Barron's proposed solution to this problem is to call upon the Department to limit the use of ground water right 37–07295, and, if necessary file a claim for injunctive relief for the illegal diversion or use of water. *See* I.C. §§ 42–351, 42–2933. The Court holds, however, that Barron's position is not well supported. Barron's proposition is in reality an attempt to shift the burden of preventing enlargement to the IDWR, yet it is Barron and not the Department who bears this burden. Additionally, Idaho Code section 42–222(1) does not contemplate curtailing junior supplemental groundwater rights so as to enable individuals to transfer the senior primary surface right to another location. Such an interpretation would undermine the very requirement of showing the absence of enlargement. Put another way, requiring the IDWR to institute injunctive litigation to accommodate Barron's transfer is not reflected in the statute. Moreover, Barron obtained water right 37–02801 as it currently exists, *i.e.,* as a water right for which there is a supplemental appropriation. Because the licensed place of use historically has been irrigated to some extent by groundwater right 37–07295, Barron took the surface right, 37–02801, subject to the groundwater right's utilization.

#### c. Historical Availability

Idaho law prohibits any transfer from resulting in an enlargement of the water right above its historical beneficial use. *See* I.C. 42–222(1). Enlargement includes increasing the amount of water diverted or consumed to accomplish the beneficial use. *See id.* Thus, if Barron's transfer would result in the use of water at a time when it was historically

unavailable, water right 37–02801B would be enlarged. Barron has submitted affidavits asserting that water is available at its present location throughout the irrigation season. However, as mentioned above, there is conflicting evidence that water is unavailable in the latter part of the summer. Thus, because the IDWR's findings are supported by substantial and competent, although conflicting, evidence, the Court will not disturb those findings.

#### C. Statutory Provisions

We next turn to whether the Department's decision violates any statutory or constitutional provision. Barron argues that the IDWR imposed a burden of proof that is inconsistent with the statutes governing the transfer of water. He challenges whether the burden imposed by the IDWR sets an inappropriate standard given the difficulty of proving no injury.

As the district court noted, however, the IDWR's director is statutorily required to examine all the available evidence and information when deciding whether to approve a proposed transfer. Although the difficulty of showing the absence of injury has prompted criticism by some courts, *see Tanner v. Humphreys,* 87 Utah 164, 172–75, 48 P.2d 484, 488–89 (1935), our statute requires Barron to present sufficient evidence to the Department so that the director can make an informed determination as to Barron's transfer application. Accordingly, the question of whether the Department's decision was in derogation of statutory provisions can alternatively be stated as whether Barron produced sufficient evidence to enable the director to approve his proposed transfer. Merely requiring Barron to present this evidence does not amount to imposing an inconsistent burden of proof. In fact, Barron's presentment of evidence of non-injury, non-enlargement, and favorable public interest is what enables the director to discharge his obligation under the statute. As noted above, Barron on several occasions failed to provide the Department with the requested information, instead relying on imprecise facts and assertions. Without a satisfactory demonstration by Barron, the director can-

not, under the statutory guidelines, approve the transfer. Thus, the Department's actions in this case do not amount to the imposition of an inconsistent burden of proof, but instead demonstrate the director's compliance with his statutory responsibility under I.C. § 42–222(1).

Additionally, Barron argues that even if the burden sets the appropriate standard, the IDWR, by issuing an order denying his transfer, went beyond that standard by placing a burden on Barron that is inconsistent with the governing statutes. Barron contends that he completed his transfer application in conformance with the statutory requirements. He asserts that his application contained sworn statements that his proposed changes would not: (1) cause any injury to another water user; (2) constitute an enlargement in use; and (3) that the information he provided was true to the best of his knowledge. Barron also contends that no person came forward to challenge the proposed transfer after notice of the proposed transfer was published in two local newspapers. The result, Barron argues, is the establishment of a prima facie showing of non-injury, non-enlargement, and favorable public interest.

According to Barron, this showing met his burden of production and shifted the burden to any protester, including the IDWR if it desired, to act as an adverse party. Barron argues that the IDWR did not act as a true protestor because the agency never presented evidence to rebut his prima facie case. Instead, Barron argues, the IDWR generally alleged that his transfer would result in injury to other water users, constitute an enlargement, and be contrary to public interest—without stating specific concerns. By doing so, Barron argues, the IDWR required him to go beyond his prima facie showing and present evidence to rebut the Department's allegations.

What Barron ignores, however, is that the director, in deciding whether to approve the transfer, is statutorily required to examine all the available evidence and information. *See* I.C. § 42–222(1). Essentially, Barron's argument is that the Department is required to accept his evidence as a prima facie show-ing, and, if no protest is lodged, grant the transfer without further consideration. But it is based upon the examination of the information and evidence in the record—including the information applicant provides, the Department's investigation and records, and the watermaster's recommendation—that the director makes the determination of whether the proposed transfer should be endorsed. Idaho Code section 42–222(1) does not provide that absent a protest by another water user, the Department is required to approve the application. Thus, the lack of protest is irrelevant to the director's decision in this case.

In addition, Barron's argument overlooks another very significant fact—that in the eyes of the director, Barron failed to make a prima facie showing on the issues of injury, enlargement, and public interest. In other words, what Barron argues was a prima facie showing on his part was not considered as such by the director. Had Barron made a prima facie showing as to each of the required statutory elements, his application would have seemingly been approved. However, as discussed above, the record supports the director's determination. Because Barron must present to the Department sufficient evidence of non-injury, no enlargement, and favorable public interest, the Court holds that the IDWR's decision was not in violation of any statutory provisions.

**D. Statutory Authority**

▪ Finally, we turn to whether the Department's decision denying Barron's transfer exceeded the agency's authority. Barron argues that he made a prima facie showing as to the elements required for a transfer of water under Idaho law. This showing, he contends, is all that is necessary to approve the transfer. Therefore, Barron argues, the IDWR's denial of his application was in excess of statutory authority. However, as discussed above, there is substantial and competent evidence supporting the director's determination that Barron failed to provide sufficient information to make a prima facie showing. Accordingly, the Court holds that the Department's decision did not exceed its statutory authority.

## CONCLUSION

The IDWR's decision denying Barron's transfer application is affirmed. No attorney fees have been requested; therefore costs, but not attorney fees, are awarded to respondent.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and McKEE, Senior District Judge concur.

