## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 35175

IN RE: IDAHO DEPARTMENT OF )
WATER RESOURCES AMENDED FINAL )
ORDER CREATING WATER DISTRICT )
NO. 170 )
                      )

                      )

THOMPSON CREEK MINING COMPANY, )
     Petitioner-Appellant, )
v. )
                      )

IDAHO DEPARTMENT OF WATER )
RESOURCES, )
                      )
     Respondent. )

Boise, September Term

2009 Opinion No. 137

Filed: October 27, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Brent J. Moss, District Judge.

District court order upholding creation of water district, affirmed.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. Dylan B. Lawrence argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Andrea L. Courtney, Deputy Attorney General, argued.

---

BURDICK, Justice

This case arises out of the creation of Water District No. 170 (WD170) by the director (Director) of the Idaho Department of Water Resources (IDWR). Thompson Creek Mining Company (Thompson Creek) alleges that the Director violated procedural due process under both the Idaho and United States Constitutions in creating WD170 without following proper hearing guidelines as established under the Idaho Administrative Procedure Act (IDAPA). Thompson Creek further alleges that the Director exceeded his mandate in creating WD170 without substantial evidence that the district was required in order to properly administer uses of the water resource. Thompson Creek seeks attorney fees on appeal. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2004, the State of Idaho signed the Wild & Scenic Rivers Agreement (WSRA). Following Thompson Creek's objection to the WSRA, the Snake River Basin Adjudication (SRBA) court approved the WSRA, with certain qualifications to the enforcement of the WSRA, notably holding that only signatories to the agreement would be bound by its terms.

On October 7, 2005, the Director of IDWR issued a public notice describing the proposed water district, WD170, the reasons for the proposed creation of that district, and the time and place of the public meeting and hearing (7:00 p.m. on November 9, 2005, in Challis, Idaho). The public notice was mailed to each water right holder within proposed WD170's geographic boundaries (administrative basins 71 & 72), and published in two local newspapers of general circulation.

At 7:00 p.m. on November 9, 2005, pursuant to the Public Notice, the Director of IDWR conducted a public hearing on the proposed creation of WD170. The transcript of that hearing reveals that, although the meeting began at 7:00 p.m., it did not go on the record until 8:10 p.m.

The Director of IDWR issued a final order establishing WD170 on March 6, 2006, and Thompson Creek filed a petition for reconsideration on March 17, 2006. The Director issued an amended final order on April 6, 2006.

On May 5, 2006, Thompson Creek filed a petition for judicial review. On February 22, 2008, the district court upheld IDWR's amended final order. On April 2, 2008, Thompson Creek filed its notice of appeal to this Court, and filed an amended notice of appeal on June 3, 2008.

# II. STANDARD OF REVIEW

"In an appeal from a district court, where the court was acting in its appellate capacity under IDAPA, the Supreme Court reviews the agency record independently of the district court's decision." *Spencer v. Kootenai County,* 145 Idaho 448, 452, 180 P.3d 487, 491 (2008). If the sufficiency of factual findings was challenged before the district court and subsequently challenged in this Court, we review the agency record de novo to see if those factual findings are supported by substantial and competent evidence. Where the agency record provides substantial and competent evidence supporting the agency's findings of fact, and the agency conclusions of law follow from those facts, and the district court affirmed the agency decision, we affirm the

2

district court's decision as a matter of procedure. *See Losser v. Bradstreet,* 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

Judicial review of a final decision of IDWR is governed by IDAPA, Title 67, chapter 52 of the Idaho Code. I.C. § 42-1701A(4). Under IDAPA, the Court reviews an appeal from an agency decision based upon the record created before the agency. I.C. § 67-5277; *Dovel v. Dobson*, 122 Idaho 59, 61, 831 P.2d 527, 529 (1992). As to the weight of the evidence on questions of fact, this Court does not substitute its judgment for that of the agency. *Spencer*, 145 Idaho at 452, 180 P.3d at 491. The Court shall affirm an agency decision unless the Court finds the agency's findings, inferences, conclusions, or decisions were: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3); *see Barron v. Idaho Dep't of Water Res.*, 135 Idaho 414, 417, 18 P.3d. 219, 222 (2001). The party challenging the agency decision must show that the agency erred in a manner specified in I.C. § 67-5279(3), and that a substantial right of the petitioner has been prejudiced. I.C. § 67-5279(4); *Barron*, 135 Idaho at 417, 18 P.3d at 222.

### III. ANALYSIS

This Court must consider four issues. First, whether the Director of IDWR complied with IDAPA in creating WD170.[1] Second, whether the Director correctly interpreted Idaho Code § 42-604, and whether his decision to create WD170 is based upon substantial evidence in the record. Third, whether Thompson Creek demonstrated that it was deprived of a property interest through the State's creation of WD170. Fourth, whether Thompson Creek is entitled to attorneys fees on appeal. We will address each of these issues in turn.

### A. IDWR Complied with IDAPA in Creating WD170

This Court, in *Nettleton v. Higginson,* held that "[t]he requirement of procedural due process is satisfied by the statutory scheme of Title 42 of the Idaho Code."[2] 98 Idaho 87, 91, 558

---

[1] Thompson Creek also claims that the WSRA was the sole reason for the creation of WD170, and therefore, Thompson Creek, as a non-signatory, should not be subject to WD170. This discussion finds that the WSRA was far from the sole support for the creation of WD170. In addition, this argument has no basis in law. Therefore, it has not been addressed beyond this footnote.

[2] It is interesting to note that at the time the decision in *Nettleton* was made in 1977, holding that the statutory scheme of Title 42 provides sufficient due process, the second and third paragraphs of I.C. § 42-604 had not yet been enacted (and would not be for fifteen years). *See* 1992 Idaho Sess. Laws, ch. 339 § 5, p. 1016. Thompson

P.2d 1048, 1052 (1977). Idaho Code § 42-1701A provides that all IDWR hearings shall be conducted in accordance with IDAPA. Idaho Code § 42-604 specifically requires notice and a hearing prior to "entering an order creating, modifying, or abolishing a district" and states that "[t]he director's order is subject to judicial review" in accordance with IDAPA. Therefore, analysis of whether the necessary process was provided becomes an inquiry into whether the provisions of IDAPA were substantially complied with.

Thompson Creek argues that IDWR violated IDAPA in three ways: 1) failing to record the entire public hearing held by the Director prior to the creation of WD170, in violation of I.C. § 67-5242(3)(d); 2) failing to provide an impartial and disinterested decision-maker, as required by *Eacret v. Bonner County*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004); and 3) depriving water rights holders the opportunity to provide meaningful input regarding the creation of WD170.

*1. Record of Hearing*

Thompson Creek argues that the Director failed to record the entire hearing, in violation of I.C. § 67-5242(3)(d), and I.C. § 67-5279(3)(a), (c). IDWR responds that Thompson Creek's argument on this point should be deemed waived as it was not raised in Thompson Creek's post-hearing Written Comments, its Petition for Reconsideration, or its Objection to Administrative Record (pursuant to Idaho Rule of Civil Procedure 84(j)). IDWR argues alternatively that the unrecorded "hearing" that Thompson Creek refers to was merely an informal question-and-answer session that preceded the formal hearing on the creation of WD170, and was not relied upon by the Director in his decision to create WD170.

**a. Thompson Creek Waived The Objection**

Idaho Rule of Civil Procedure 84 governs judicial review of agency actions by the district court, and I.R.C.P 84(j) concerns settlement of the record, providing, *inter alia*:

> Any party may object to the transcript and record with [sic] fourteen (14) days from the date of mailing of the notice of the parties that the transcript and record has been lodged with the agency. Upon failure of the parties to file an objection within that time period, the transcript and record shall be deemed settled.

---

Creek argues that the first paragraph does not authorize the creation of actual structured water districts, but only authorizes the creation of boundaries for water districts. Clearly, this Court in *Nettleton* not only found paragraph one of I.C. § 42-604 sufficient to authorize the creation of an actual structured water district, but also found that it provided sufficient process, even without the hearing requirements in existence under the law today.

4

An issue not raised below will generally not be considered or reviewed on appeal. *Mountainview Landowners Coop. Ass'n v. Cool*, 142 Idaho 861, 866, 136 P.3d 332, 337 (2006). This Court held, in *Manookian v. Blaine County*, that I.R.C.P. 84(j) applies to administrative decisions being appealed to a district court, and failure to raise an issue before an administrative agency will preclude that issue from being heard upon review by the district court. 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987).

The record shows that Thompson Creek did file an objection to the record, but failed to object upon the basis that the transcript of the hearing was inadequate for failure to include the portion of the hearing that took place from 7:00-8:10 p.m. Thompson Creek argues that I.R.C.P. 84(j) is inapplicable as Thompson Creek is challenging a procedural error at the hearing itself rather than an error in the preparation of the transcript of the record. Nothing within the rule supports this attempted distinction. Finally, Thompson Creek alleges that this error could not have been corrected by the Director and, therefore, raising the objection would have been fruitless and should be excused. In fact, a proper objection to the record would have provided IDWR with an opportunity to reconsider the sufficiency of the record, and at a minimum would have preserved the issue for appeal. *See* Idaho R. Civ. P. 84(j) ("The *agency's decision on the objection* and all evidence, exhibits, and written presentations on the objection *shall be included in the record on petition for review*.") (emphasis added).

Thompson Creek first objected to the adequacy of the record, on the grounds that it failed to include a transcript of the first seventy minutes of the hearing, when appealing IDWR's decision to the district court below. Therefore, we find that Thompson Creek waived its objection to the sufficiency of the hearing transcript both by failing to include the objection in its Objection to Administrative Record, as required by I.R.C.P. 84(j), and by raising the issue for the first time on appeal, in violation of *Mountainview*.

### b. The Question-and-Answer Session Should Have Been Recorded, but the Failure to Record Did Not Prejudice a Substantial Right of Thompson Creek

Having found the objection to the record waived, we nonetheless choose to discuss this issue in order to clarify the requirements of I.C. § 67-5242. Idaho Code § 67-5242(3)(d) provides that at an administrative hearing, the presiding officer "[s]hall cause the hearing to be recorded at the agency's expense." The plain legislative purpose behind this provision is to

create a record of agency hearings sufficient to provide the district court with a meaningful record for review.

The Director gave notice to affected water rights holders that a hearing on the proposed creation of WD170 would be held at 7:00 p.m. on November 11, 2005, in Challis, Idaho. In the transcript of the portion of the hearing that was recorded, the Director states, "[w]e went on the record at approximately 8:10 p.m. This meeting began shortly after 7:00 p.m. but was preceded by a period of questions and answers on related matters."

Clearly the Director should have begun recording when the proceedings began, at 7:00 p.m. The public was given notice that the meeting would begin at 7:00 p.m. and the meeting actually began at 7:00 p.m. To argue, after the fact, that over seventy minutes of the hearing did not need to be included in the record because it was a mere "question-and-answer session" is disingenuous. The Director has stated that he did not rely upon any information articulated during this unrecorded seventy minutes that was not also reported on the record, but this is beside the point. In order for courts to effectively review the administrative process they must be provided with a full transcript of the hearing in the record.

However, under IDAPA, notwithstanding procedural violations, "[the] agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). Thompson Creek has failed to demonstrate that its substantial rights have been prejudiced by this procedural defect in not recording the entire hearing. Thompson Creek acknowledges that the Director repeatedly implored all parties to come forth and make any comments they wanted on the record, during the recorded portion of the hearing on November 11, 2005. Furthermore, Thompson Creek acknowledged at oral argument that one of its representatives was present at the hearing, including the unrecorded portion. Additionally, the Director accepted written comments from Thompson Creek after the hearing, considered them, and included discussion of them in his Amended Final Order. Therefore, as ample opportunity was provided for all comments to be made on the record, Thompson Creek had actual knowledge of everything said at the hearing, and the Director took all comments into consideration, we find that the procedural violation did not prejudice Thompson Creek's substantial rights.

### 2. Director Bias/Depriving Water Rights Holders of the Opportunity to Provide Meaningful Input

Thompson Creek argues that the Director believed that the WSRA obligated him to create WD170, and that the Director was statutorily precluded from creating a water district

6

solely based upon the WSRA. Thompson Creek further asserts that this false belief violated due process in rendering the Director a biased decision-maker, and in depriving water rights holders the opportunity to provide meaningful input regarding the creation of WD170. IDWR responds that this argument should be deemed waived as Thompson Creek failed to seek the Director's disqualification under I.C. § 67-5252. IDWR argues, alternatively, that the Director was aware that the WSRA was not binding upon him and that he based his decision to create WD170 upon substantial evidence in the record, not upon the WSRA. Ultimately, the claim of director bias and the claim of depriving water rights holders of an opportunity to provide meaningful input are the same claim, and shall be treated as such.

### a. Biased Decision-Maker Argument Not Waived

Idaho Code § 67-5252(2) provides, *inter alia*:

> Any party may petition for the disqualification of a person serving or designated to serve as presiding officer: (a) within fourteen (14) days after receipt of notice indicating that the person will preside at the contested case; or (b) promptly upon discovering facts establishing grounds for disqualification, *whichever is later*.

(Emphasis added). Thompson Creek argues that it was unaware of the Director's bias until it reviewed the administrative record, subsequent to the hearing. Idaho Code § 67-5252 does not require that a biased decision-maker claim be raised prior to an agency hearing.

Turning to the *Mountainview* analysis, the issue becomes whether Thompson Creek raised the issue of director bias for the first time on appeal. *See Mountainview Landowners Coop. Ass'n v. Cool*, 142 Idaho 861, 866, 136 P.3d 332, 337 (2006). This Court has held that when an issue is not formally raised but is actually considered below, it will be deemed to have been raised below. *Manookian v. Blaine County*, 112 Idaho 697, 700, 735 P.2d 1008, 1011 (1987) ("The distinction must be made between an issue not formally raised below and an issue that was never raised below. Where an issue never surfaced below, it is not proper for it to be raised on appeal.").

Thompson Creek did not specifically couch its argument before IDWR as one of director bias. Rather, Thompson Creek argued that the Director believed that the State of Idaho had bound him to create WD170 when the State signed the WSRA, or at a minimum, that the Director's knowledge of the WSRA improperly predisposed him to create WD170. Ultimately, Thompson Creek's argument regarding the WSRA's influence on the Director is the basis for

7

their claim that the Director was biased. Therefore, we find Thompson Creek's argument of director bias was not waived.

### b. Director was Not Biased

"The Due Process Clause entitles a person to an impartial and disinterested tribunal." *Eacret v. Bonner County*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004) (citing *Marshall v. Jerrico, Inc.,* 446 U.S. 238 (1980)). This requirement applies not only to courts, but also to state administrative agencies. *Id.* (citing *Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995)). In *Marcia T. Turner, L.L.C. v. City of Twins Falls*, this Court further examined what makes a decision-maker biased, holding:

> In the context of due process, it does not mean 'lack of preconception in favor of or against a particular legal view. This sort of impartiality would be concerned, not with guaranteeing litigants equal application of the law, but rather with guaranteeing them an equal chance to persuade the court on the legal points in their case.' It also does not mean having 'no preconceptions on legal issues, but [being] willing to consider views that oppose his preconceptions, and remain [ing] open to persuasion, when the issues arise in a pending case.' Impartiality under the Due Process Clause does not guarantee each litigant a chance of changing the judge's preconceived view of the law.

144 Idaho 203, 209, 159 P.3d 840, 846 (2007) (alterations in original) (citations omitted) (quoting *Republican Party of Minn. v. White,* 536 U.S. 765 (2002)).

> A decision maker is not disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that the decision maker is 'not capable of judging a particular controversy fairly on the basis of its own circumstances.'

*Turner*, 144 Idaho at 209, 159 P.3d at 846 (quoting *Eacret*, 139 Idaho at 785, 86 P.3d at 499).

Thompson Creek argues that the Director of IDWR believed he was bound by the WSRA to create WD170, and that the Director presented slides at the public hearing stating that IDWR "must establish" WD170. The Director responds that the SRBA court, in authorizing the WSRA, specifically excluded IDWR from being bound by that agreement as a non-signatory party, and that the Director was capable of judging the controversy fairly. Thompson Creek counters that the Attorney General for the State of Idaho was a signatory party, signing "for the State of Idaho, including the Idaho Water Resources Board," and that the Attorney General, as an agent for the State, may bind the State and all of the State's administrative agencies.

Thompson Creek's argument is misguided. The Director was certainly entitled to consider the WSRA as contextual information in determining whether the creation of WD170

8

was necessary, particularly as the WSRA is the reason the State of Idaho filed a motion for interim administration of water rights, pursuant to I.C. § 42-1417. It is true that the WSRA anticipated that IDWR would create WD170. The slide Thompson Creek points to as evidence that the Director had pre-determined that WD170 would be created is, in fact, a bullet-point summarizing provisions of the WSRA itself. In approving the proposed WSRA, the SRBA court specifically decreed that the provisions of the WSRA addressing administration of water rights "shall not be binding on this Court or non-signatory parties with regard to administration of water rights *by IDWR*." Whether or not the Attorney General, as an agent for the State of Idaho, may bind a State agency, the SRBA court made it clear that in this instance IDWR was not bound.

The Director believed that the creation of WD170 was necessary for the proper administration of water rights within the district area, which is the reason the public hearing was convened. His preliminary belief that WD170 should be created does not mean that the Director was not capable of judging that particular controversy fairly on the basis of its own circumstances. *See Turner*, 144 Idaho at 209, 159 P.3d at 846. The Director's Amended Final Order demonstrates that he considered Thompson Creek's arguments opposing the creation of WD170, and considered a broad range of other factors in coming to the decision that the creation of WD170 was necessary. The record shows that IDWR treated Thompson Creek fairly throughout the process of deciding to create WD170. IDWR listened to Thompson Creek's concerns, but in the end simply disagreed with Thompson Creek's conclusions. In fact, 17 of 26 paragraphs of the Conclusions of Law in the Amended Final Order were devoted to responding to concerns raised by Thompson Creek. Therefore, we find that the Director was not biased in the creation of WD170.[3]

## B. IDWR Correctly Interpreted Idaho Code § 42-604 and had a Substantial Basis Supporting the Agency Order

Thompson Creek argues that the Director incorrectly interpreted I.C. § 42-604, and violated his mandate by creating WD170 in a manner inconsistent with statutory authority. Specifically, Thompson Creek alleges that a water district may only be created where there are

---

[3] Thompson Creek also argues that by coming to the public hearing on November 11, 2005, with a proposal in place for WD170, including the structure of the proposed district, the Director was demonstrating that his mind was made up, and that this shows he was biased. On the contrary, I.C. § 42-604 requires the Director to present the public with

9

existing conflicts or water shortages, and that, even then, a district cannot be created unless there is no other option, or it is "required." In addition, Thompson Creek claims that the Director has no authority to create sub-districts. Finally, Thompson Creek alleges that the Director did not have a substantial basis upon which to decide to create WD170.

IDWR responds that Thompson Creek reads the statute incorrectly, and that the Director is actually required to create water districts under paragraph one of I.C. § 42-604 once prerequisites have been met. The Director also argues that the second paragraph of I.C. § 42-604 implicitly gives him wide discretion in structuring water districts, as appropriate for the efficient administration of water use, and that what Thompson Creek calls "sub-districts" are actually districts themselves under the law. This dispute in interpretation is focused upon the first two paragraphs of I.C. § 42-604.

1. *Interpretation of I.C. § 42-604*

Idaho Code § 42-604 reads as follows:

> **Creation of Water Districts**.
>
> The director of the department of water resources shall divide the state into water districts in such manner that each public stream and tributaries, or independent source of water supply, shall constitute a water district: provided, that any stream or water supply, when the distance between the extreme points of diversion thereon is more than forty (40) miles, may be divided into two (2) or more water districts: provided, that any stream tributary to another stream may be constituted into a separate water district when the use of the water therefrom does not affect or conflict with the rights to the use of the water of the main stream: provided, that any stream may be divided into two (2) or more water districts, irrespective of the distance between the extreme points of diversion, where the use of the waters of such stream by appropriators in one district does not affect or conflict with the use of the waters of such stream by appropriators outside such district: provided, that this section shall not apply to streams or water supplies whose priorities of appropriation have not been adjudicated by the courts having jurisdiction thereof.
>
> The director may create, revise the boundaries of, or abolish a water district or combine two (2) or more water districts by entry of an order if such action is required in order to properly administer uses of the water resource. Copies of the order shall be sent by regular mail to all holders of rights to the waters affected by the order. The director's order is subject to judicial review as provided in section 42-1701A, Idaho Code.

---

a proposal. Without a sufficiently detailed proposal in place, the public could not intelligently comment upon the proposed action and work with IDWR toward the most pragmatic solution.

Before entering an order creating, modifying, or abolishing a district, the director shall, by regular mail, send notice of the proposed action to each water user in the district or proposed district. The notice shall describe the proposed action to be taken, the reasons therefore, the time and place of a hearing to be held concerning the proposed action, and provide a time period within which written comment on the action will be accepted. The hearing shall not be held sooner than ten (10) days after the mailing of the notice, and the written comment period shall not close sooner than ten (10) days after the hearing. Instead of mailing notice, the director may publish notice describing the proposed action, the time and place for the hearing, and the deadline for receiving written comment. The notice shall be published once a week for two (2) weeks in a newspaper or newspapers having general circulation within the district or proposed district, with the second publication appearing at least ten (10) days before the date set for the hearing. The hearing shall be held within the district or proposed district, or at some nearby location convenient to the affected water users.

Each water district created hereunder shall be considered an instrumentality of the state of Idaho for the purpose of performing the essential governmental function of distribution of water among appropriators under the laws of the state of Idaho.

The goal of statutory interpretation is to discover the intention of the legislature in drafting a statute, and to apply the statute accordingly, examining "not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Hayden Lake First Prot. Dist. v. Alcorn*, 141 Idaho 388, 398-99, 111 P.3d 73, 83-84 (2005) (internal quotation marks omitted) (quoting *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)). "Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to construe the language. Where language of a statute or ordinance is ambiguous, however, this Court looks to rules of construction for guidance." *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002). In *Canty v. Idaho State Tax Commission*, this Court established that a statute is ambiguous when:

> [T]he meaning is so doubtful or obscure that "reasonable minds might be uncertain or disagree as to its meaning." *Hickman v. Lunden*, 78 Idaho 191, 195, 300 P.2d 818, 819 (1956). "However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous. . . . [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." *Rim View Trout Co. v. Higginson*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992).

138 Idaho 178, 182, 59 P.3d 983, 987 (2002) (second alteration in original) (quoting *State v. Browning*, 123 Idaho 748, 750, 852 P.2d 500, 502 (Ct.App. 1993)).

"Constructions that would lead to absurd or unreasonably harsh results are disfavored." *In re Daniel W.*, 145 Idaho 677, 680, 183 P.3d 765, 768 (2008). "Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent." *Friends*, 137 Idaho at 197, 46 P.3d at 14 (internal quotation marks omitted) (quoting *Lockhart v. Dept. of Fish and Game*, 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992)). This Court "will construe a statute so that effect is given to [all of] its provisions, and no part is rendered superfluous or insignificant." *Moreland v. Adams*, 143 Idaho 687, 690, 152 P.3d 558, 561 (2007) (internal quotation marks omitted) (quoting *Idaho Cardiology Assocs., P.A. v. Idaho Physicians Network, Inc.*, 141 Idaho 223, 226, 108 P.3d 370, 373 (2005)).

Idaho Code § 42-604 is unambiguous. Paragraph one plainly mandates that the Director of IDWR divide the state into water districts in a designated manner, provided the priorities of appropriation for water rights within that area have been adjudicated. Paragraph two provides the Director with discretion in determining how these mandatory water districts shall be structured, allowing the Director to create new districts, revise existing districts, or even abolish districts, as the Director finds necessary for the efficient distribution of water resources.

Even if this statute were not clear on its face, a review of legislative history strongly supports this interpretation. Paragraphs two and three of I.C. § 42-604 were not a part of the statute prior to 1992; however, paragraph one has existed in substantially the same form since the statute was first passed in 1903. *See* 1903 Idaho Sess. Laws p. 223; 1992 Idaho Sess. Laws, ch. 339 § 5, p. 1016. The legislature's plain purpose in adding paragraphs two and three is to provide the Director with broad discretion in structuring water districts, and to ensure that the Director considers all relevant information when making these decisions.

Thompson Creek argues that:

[t]he mandate in the first paragraph to "divide" the state into water districts relates only to the establishment of boundaries. It does ***not*** relate to the actual creation of a water district, with the organizational structure, features, and attributes established by the other water district statutes in Chapter 6 of Title 42. Only paragraph 2 - not paragraph 1 - provides the Director with the authority to "create" a water district.

12

This argument makes no sense given the legislative history of I.C. § 42-604. Clearly water districts, with organizational structure, features, and attributes, were created long before 1992, and Thompson Creek does not explain under what authority these districts were created if not under that provided in paragraph one of I.C. § 42-604. We held in 1989 that

> IDWR has the duty to direct and control the distribution of water from all of the streams in the state to the canals and ditches which divert water from them. I.C. § 42-602. To fulfill this duty IDWR is authorized to create water districts throughout the state. I.C. § 42-604.

*Marty v. State,* 117 Idaho 133, 138, 786 P.2d 524, 529 (1989). Given that IDWR was created specifically to manage water within Idaho, through water districts, a construction of I.C. § 42-604 demanding the Director of IDWR find absolute necessity before creating or modifying a water district would decrease the Director's power under I.C. § 42-602, contrary to clear legislative intent. Under I.C. § 42-602 the Director has broad powers to direct and control distribution of water from all natural water sources, *within water districts.* If the Director is only permitted to create a water district when a conflict exists, then his ability to regulate distribution of the water resource according to the prior appropriation doctrine is greatly decreased. Nothing in the Idaho Code suggests that a water district may only be created when necessitated by conflict or scarcity. In fact, efficient distribution of water, in accordance with the legislative mandate, requires that IDWR implement sufficient administrative oversight to prevent conflicts from arising, where possible, and to furnish a framework of evenhanded oversight which allows for consistent planning by water users. Under the other provisions of Idaho Code Title 42, chapter 6, the Director is granted broad authority to direct and control water, and to administer it according to the prior appropriation doctrine. The legislature has mandated that IDWR manage water resources in Idaho, and has provided IDWR with the water district as its principal tool in carrying out this mandate. Certainly the legislature was not attempting to hamstring IDWR in its efforts to carry out its mandate; therefore, it is clear that the rules of statutory construction support IDWR's interpretation of I.C. § 42-604.

As for the creation of sub-districts, these are implicitly authorized under paragraph two of I.C. § 42-604. Additionally, there is nothing in the statute restricting IDWR from creating more than one water district within a geographical area. If the Director deems it more efficient to create one district for the management of surface water and another for the management of ground water, that is within his discretion. Or if, as is the case here, the Director feels that the

13

effective management of the water resource requires a large water district to handle over-all water distribution, with smaller districts (or sub-districts) within that district to handle delivery of water within smaller areas, that is within his discretion.

We find that I.C. § 42-604 is unambiguous and plainly grants the Director broad discretion in creating, modifying, and administering water districts.

### 2. *Substantial Basis*

Thompson Creek also argues that the Director's decision to create WD170 was not supported by substantial evidence in the record. Thompson Creek maintains that I.C. § 67-5279(3)(d), when read in conjunction with Thompson Creek's interpretation of I.C. § 42-604, requires that the Director must find a water district absolutely necessary for proper administration of the water resource before he may create a district. In addition to disagreeing with Thompson Creek's interpretation of I.C. § 42-604, the Director points to the amended final order, specifically the findings of facts and conclusions of law, as establishing that the decision to create WD170 was supported by substantial evidence. Having already rejected Thompson Creek's proposed interpretation of § 42-604, it is clear that the Director's order rested upon substantial evidence in the record.

Idaho Code § 67-5279(3)(d) requires that the agency order be upheld by a reviewing court unless that order is "not supported by substantial evidence on the record as a whole." Substantial evidence is "relevant evidence that a reasonable mind might accept to support a conclusion." *Pearl v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 137 Idaho 107, 112, 44 P.2d 1162, 1167 (2002). "Substantial evidence is more than a scintilla of proof, but less than a preponderance." *Id.*

In the amended final order the Director provides findings of fact and conclusions of law that provide substantial evidence supporting his decision to create WD170. Specifically, the amended final order finds that existing water districts within the area of WD170 did not enforce surface water right limitations outside of the irrigation season, nor did any of the existing water districts regulate diversions of ground water. Further, there were no existing water districts within much of the area to be included in WD170.

The amended final order provides substantial evidence supporting the Director's decision to create WD170. As we noted above, I.C. § 42-604 provides the Director of IDWR with broad discretion in the establishment and modification of water districts, in accordance with his duty to

manage the distribution of the water resource. The Director has shown substantial evidence supporting his decision to establish the district, therefore, we find that the Director of IDWR fully complied with statutory standards in creating WD170.

**C. Thompson Creek has Failed to Demonstrate that the State Deprived it of a Property Interest Through the Creation of WD170**

The State shall not deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

> Determining procedural due process rights involves a two-step analysis: first, determining whether a governmental decision would deprive an individual of a liberty or property interest within the meaning of the Fourteenth Amendment's Due Process Clause; and second, if a liberty or property interest is implicated applying a balancing test to determine what process is due.

*State v. Rogers*, 144 Idaho 738, 740, 170 P.3d 881, 883 (2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976)).

To make a claim grounded in constitutional procedural due process Thompson Creek must demonstrate: (1) that Thompson Creek has a property interest at issue, and (2) that the proposed state action will deprive Thompson Creek of that property interest.

### 1. *Thompson Creek has a Property Interest*

Idaho law has recognized that a water right is a property interest for purposes of the Fourteenth Amendment and, therefore, due process of law must be provided before the state deprives a citizen of a water right. *Nettleton v. Higginson*, 98 Idaho 87, 90, 558 P.2d 1048, 1051 (1977).

### 2. *The Creation of WD170 did not Deprive Thompson Creek of its Property Interest*

In *Nettleton,* this Court heard claims by the holder of an unadjudicated water right that the creation of a water district giving holders of adjudicated water rights a priority in distribution over holders of unadjudicated water rights, regardless of their respective dates of appropriation, deprived an unadjudicated water right holder of his property interest without due process of law. *See Nettleton*, 98 Idaho 87, 558 P.2d 1048. The Court in *Nettleton* held that the action of the State in creating a water district deprived the plaintiff of his property interest in his water right by subordinating that right to holders of adjudicated water rights with later dates of appropriation. *Id.*

The deprivation of property shown in *Nettleton* is not demonstrated by Thompson Creek in this case. As we wrote in *Nettleton*, "[w]e agree that individual water rights are real property rights which must be afforded the protection of due process of law *before they may be taken by the state*." *Nettleton*, 98 Idaho at 90, 558 P.2d at 1051 (emphasis added). In this case the challenged action, the creation of WD170, does not deprive or threaten to deprive Thompson Creek of a water right. In *Martin v. Spalding*, the Court of Appeals emphasized that in order for a cause of action for procedural due process to be established, the plaintiff must demonstrate not only that a property interest exists, but that state action is *depriving* him of that property interest. 133 Idaho 469, 473, 988 P.2d 695, 699 (Ct. App. 1998). *See also Elbert v. Bd. of Educ.*, 630 F.2d 509, 512 (7th Cir. 1980). Thompson Creek's water rights have been adjudicated and their appropriation dates established. Unlike in *Nettleton,* here there is no threat that creation of WD170 will deprive Thompson Creek of its properly adjudicated water rights, nor subordinate those rights to other water rights held under a subsequent date of appropriation. In fact, the increased scrutiny and comprehensive enforcement of water rights within the district will likely provide greater protection to Thompson Creek's property interest.

Thompson Creek also argues that because it will be subject to proportional fees for the maintenance of the newly established district, and it faces the possibility of a halt of water deliveries if it does not pay these fees, this is sufficient to constitute a deprivation of property. The State of Idaho owns all water within the state but allows citizens to appropriate that water for beneficial use. *See Nettleton,* 98 Idaho at 90-91, 558 P.2d at 1051-52. The State is authorized to organize and regulate the distribution of water in accordance with dates of appropriation by the State Constitution. Idaho Const. art. XV. § 1. "The governmental function in enacting ... the entire water distribution system under Title 42 of the Idaho Code is to further the state policy of securing the maximum use and benefit of its water resources." *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 735, 947 P.2d 400, 408 (1997) (quoting *Nettleton v. Higginson*, 98 Idaho 87, 91, 558 P.2d 1048, 1052 (1977)). A water user has no property interest in being free from the State's regulation of water distribution in accordance with the prior appropriation doctrine, nor do water users who receive the benefit of water from the State have a property interest in not being taxed for the effective management of that benefit. Thompson Creek's argument presupposes nonpayment and a lack of due process prior to

curtailment of water rights. Therefore, the State's action in creating WD170 does not deprive Thompson Creek of a property interest.

If there is any other way in which the State's action in creating WD170 deprives Thompson Creek of its property right, Thompson Creek has failed to show what it is. Therefore, we find that Thompson Creek was not deprived of a property interest as a result of the State's creation of WD170.

## C. Attorney Fees

Idaho Code § 12-117 has two requirements for attorney fees to be awarded. First, the party seeking attorney fees must be the prevailing party, and second, the Court must find that the party whom fees are to be awarded against must have acted without a reasonable basis in fact or law. Thompson Creek is not the prevailing party, and IDWR did not request attorney fees on appeal; therefore, no attorney fees are awarded.

## IV. CONCLUSION

We affirm the district court in all regards. Costs to Respondent, IDWR.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**